# EXHIBIT 1



CJ-2021-4249
Timmons
FILED IN DISTRICT COURT
OKLAHOMA COUNTY
OCT -7 2021
RICK WARREN
COURT CLERK
73

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| HUI HULIAU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CJ-2021-4249 |
| | ) |
| | ) JURY TRIAL DEMANDED |
| KWN ASSETS, LLC. | ) |
| | ) |
| Defendant. | ) |

## PETITION FOR DECLARATORY RELIEF

Plaintiff Hui Huliau ("Hui Huliau"), for its Petition against Defendant KWN Assets, LLC ("KWN"), alleges as follows:

### PARTIES AND VENUE

1. Hui Huliau is a Hawaii not-for-profit corporation registered in the State of Oklahoma.

2. KWN is an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma.

3. Venue is proper in this Court pursuant to 12 Okla. Stat. § 134.

### FACTUAL BACKGROUND

4. Hui Huliau is recognized as a Native Hawaiian Organization ("NHO") for purposes of the Small Business Association ("SBA") Programs. Hui Huliau is the sole or majority owner of several SBA 8(a) Business Development Program NHO-owned entities that seek and perform government contracts (collectively, the "8(a) Companies").

5. On September 30, 2019, Hui Huliau entered into a Letter Agreement to Stock Purchase Agreement (the "Letter Agreement") with KWN to purchase 100% of the stock and equity interest in LNO, Inc., d/b/a H2 ("LNO"), a Georgia corporation, for $8,000,000. LNO is

listed as a Federally Registered Native American Entity and provides IT training, IT support, system engineering, and facilities management. Pursuant to the terms of the Letter Agreement, KWN agreed to loan LNO $4,000,000 to accommodate Hui Huliau's purchase of LNO's stock (the "KWN Loan"). The Letter Agreement is attached hereto as Exhibit 1.

6. The transaction contemplated by the Letter Agreement closed on October 1, 2019 and, since that date, Hui Huliau has owned LNO. In addition to the contracts it has performed on its own behalf, LNO has provided marketing and promotional services for Hui Huliau and the 8(a) Companies in an effort to develop Hui Huliau's and the 8(a) Companies' capabilities to compete for and perform government set-aside contracts.

7. Under the terms of the Letter Agreement, while the 8(a) Companies would continue to be controlled by Hui Huliau, the 8(a) Companies would be required to immediately transfer to LNO any revenue received from a government contract sourced by LNO as a pass-through (the "Revenue Sharing Provision"). *See* Ex. 1, ¶ 1(b).

8. The Letter Agreement further provides that KWN would hold novation forms for all contracts received by the 8(a) Companies for LNO as collateral for the KWN Loan (the "Novation Provision"). *See* Ex. 1, ¶ 1(e).

9. The Letter Agreement requires that, upon repayment of the KWN Loan, all free cash flow of LNO be distributed to a new entity to be owned 40% by KWN, 40% by Hui Huliau, 10% by Mike Benson, and 10% by a Business Development Representative (the "Ownership Provision"). *See* Ex. 1, ¶ 1(g).

10. Finally, the Letter Agreement requires management of LNO be mutually agreed upon by Kenny Novotny, KWN's principal, and Deryl Wright, CEO of Hui Huliau (the "Management Provision"). *See* Ex. 1, ¶ 1(i).

11. On May 10, 2021, Hui Huliau received a letter from counsel for KWN. The letter contends that Hui Huliau has not complied with its obligations as set forth in the Letter Agreement, including but not limited to the obligations contained in the Revenue Sharing Provision, the Novation Provision, the Ownership Provision, and the Management Provision. The letter demands, in part, that Hui Huliau provide a full accounting of all LNO contracts sent to Hui Huliau and transfer to LNO all funds received from such contracts. A copy of the letter is attached hereto as Exhibit 2.

12. Hui Huliau believes the Revenue Sharing Provision, the Novation Provision, the Ownership Provision, and the Management Provision of the Letter Agreement are unenforceable and void because they directly conflict with the controlling SBA regulations governing Hui Huliau and the 8(a) Companies. Hui Huliau therefore seeks a declaratory judgment from this Court that these provisions cannot be enforced against Hui Huliau, as set forth below. An actual case or controversy exists as to the enforceability of the Letter Agreement's Revenue Sharing Provision, the Novation Provision, the Ownership Provision, and the Management Provision.

## CLAIM FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

13. Hui Huliau realleges and incorporates by reference paragraphs 1-12 above.

14. At all times relevant hereto, Hui Huliau and the 8(a) Companies have been subject to rules and regulations promulgated by the SBA regarding their performance of government contracts.

15. The Letter Agreement purports to require the following: (i) Hui Huliau must transfer to LNO all revenue received by any of the 8(a) Companies pursuant to a government contract sourced by LNO as a pass-through pursuant to the Revenue Sharing Provision; (ii) Hui Huliau must deliver to KWN novation forms for all contracts received by the 8(a) Companies from

LNO pursuant to the Novation Provision; (iii) upon repayment of the KWN Loan, all free cash flow of LNO be distributed to a new entity to be owned 40% by KWN, 40% by Hui Huliau, 10% by Mike Benson, and 10% by a Business Development Representative pursuant to the Ownership Provision; and (iv) management must be mutually agreed upon by Kenny Novotny and Deryl Wright pursuant to the Management Provision.

16. Under SBA regulations, 8(a) contracts, such as those performed by the 8(a) Companies, must be performed by the participating entity that originally received it unless the SBA grants a waiver. 13 C.F.R. § 124.515(a). Absent such waiver, the SBA must terminate a contract upon its transfer or novation "for any reason to another firm." 13 C.F.R. § 124.515(a)(1)(ii). While the SBA Administrator may waive such a requirement, it can only do so upon the request of the 8(a) contractor itself where one of the following conditions applies: (1) the owners of the 8(a) firm must *temporarily* surrender partial control in order to obtain equity financing; (2) the government contract passes to another entity that would itself be eligible to receive the award of the 8(a) contract directly; (3) the disadvantaged individual (upon whom eligibility was based) can no longer exercise control of the firm due to incapacity or death; (4) the agency certifies that contract termination "would severely impair attainment of the agency's program objectives or missions"; or (5) the disadvantaged owners of a graduated 8(a) firm must relinquish ownership of the voting stock majority to raise equity capital (and other ownership and control conditions are met). 13 C.F.R. § 124.515(b). Because none of these conditions applies, and specifically because LNO would not itself be eligible to receive an 8(a) contract, the transfer of any such contract to LNO by the 8(a) Companies would likely result in termination of the contract.

17. Further, SBA regulations require the 8(a) Companies be unconditionally owned by an NHO, like Hui Huliau, in order to be eligible for 8(a) and Small Disadvantaged Business set-

4

aside awards to NHOs. 13 C.F.R. § 124.105. Requiring the transfer of all revenue received by the 8(a) Companies for contracts sourced by LNO would almost certainly result in a finding that the 8(a) Companies were not unconditionally owned and/or controlled by an NHO, as such is clearly inconsistent with SBA's 8(a) requirements. *Id.* In addition, such transfer would likely constitute an excessive withdrawal under SBA regulations and would frustrate the SBA's goal of ensuring that profits from entities such as the 8(a) Companies flow to the parent NHO in order to benefit Native Hawaiians. *See* 13 C.F.R. § 124.110.

18. The Revenue Sharing Provision, the Novation Provision, the Ownership Provision, and the Management Provision are in direct violation of the rules and regulations promulgated by the SBA regarding the performance of 8(a) contracts by NHO-owned entities. Therefore, the provisions are void and cannot be enforced against Hui Huliau.

19. Pursuant to the terms of the Letter Agreement, any term or provision that is found to be invalid, illegal, or incapable of being enforced by any rule of law or public policy may be severed from the Agreement, with the remaining terms and provisions continuing in full force and effect. *See* Ex. 1, ¶ 5.

20. Hui Huliau is entitled to a declaratory judgment that the Revenue Sharing Provision, the Novation Provision, the Ownership Provision, and the Management Provision are void and unenforceable under the SBA's regulations governing firms' participation in the 8(a) Program and performance of 8(a) contracts. Hui Huliau is also entitled to an injunction precluding KWN from seeking to enforce any such provisions against Hui Huliau.

21. Hui Huliau is also entitled to recover a reasonable attorney's fee and costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, Hui Huliau prays:

(i) That this Court grant judgment in favor of Hui Huliau declaring the Revenue Sharing Provision, the Novation Provision, the Ownership Provision, and the Management Provision void and unenforceable.

(ii) That this Court grant an injunction restraining KWN from seeking to enforce the Revenue Sharing Provision, the Novation Provision, the Ownership Provision, and the Management Provision against Hui Huliau.

(iii) That this Court award reasonable attorney's fees to Hui Huliau.

(iv) That costs of this action be awarded to Hui Huliau.

(v) That this Court grant such other and further relief as it shall deem just.

Respectfully submitted,

*/s/ Elizabeth A. Price*
Elizabeth A. Price, OBA No. 22278
Armand Paliotta, OBA No. 15320
HARTZOG CONGER CASON, LLP
201 Robert S. Kerr Avenue, Suite 1600
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-7000
Facsimile: (405) 996-3403

**ATTORNEYS FOR PLAINTIFF**

September 30, 2019

## LETTER AGREEMENT TO STOCK PURCHASE AGREEMENT

This Letter Agreement to Stock Purchase Agreement (this "Letter Agreement") is made effective the 30th day of September, 2019. Reference is made hereby to that certain Stock Purchase Agreement (the "Purchase Agreement") dated as of September 30, 2019, by and among Hui Huliau, a Hawaii non-profit corporation ("Buyer"), and Floyd A. Orial, Michael A. Benson and Jamie Royston (collectively, the "Shareholders" and individually, each a "Shareholder"). Additionally, reference is made hereby to that certain Promissory Note (the "Promissory Note") dated as of September 30, 2019, by and among LNO, Inc. and KWN Assets LLC ("KWN").

**WHEREAS**, the Buyer, pursuant to the Purchase Agreement, is acquiring 100% of the stock and equity interest in LNO, Inc., a state of Georgia corporation ("LNO").

**WHEREAS**, KWN has agreed to lend LNO, Inc. $4,000,000.00 pursuant to the terms of the Promissory Note in order for the Buyer to fund the acquisition of LNO pursuant to the Purchase Agreement.

**WHEREAS**, in order for Buyer to close on acquisition of LNO on the date of this Letter Agreement, the Buyer and KWN have agreed to enter into this Letter Agreement to set forth various terms and additional conditions which are agreed upon by Buyer and KWN, but have yet to be codified in formal agreements.

**WHEREAS**, the Buyer and KWN agree to enter into this Letter Agreement as a precursor to entering into additional formal agreements by and between Buyer and KWN.

**NOW, THEREFORE**, in consideration of the premises, covenants, and agreements contained herein, the Buyer and KWN hereby agree as follows:

1. Although LNO will be entirely owned by Buyer after the closing on the Purchase Agreement, Buyer and KWN hereby agrees as follows as it relates to LNO:

    a. All bank accounts, whether operating accounts, savings accounts, or others, shall all be maintained at Bank 7 immediately following closing.

    b. A lock box(s) shall be set up by LNO at Bank 7 to receive any and all funds payable to LNO. Additionally, a for any entity of the Buyer ("Buyer's Entity") which receives a contract from LNO or any of its representatives, officers, or business development people, ("Such Contracts") any funds from Such Contracts shall be immediately transferred upon receipt by Buyer's Entity to the LNO. It is agreed that on LNO contracts that the Wide Area Work Flow payment shall be set up for the lock box at Bank 7 for LNO.

    c. For all bank accounts and lock boxes at Bank 7 set up for LNO and Buyer's Entity, Alysa Newcomb with Remington Management shall be the only signatory. Kenny Novotny and Deryl Wright shall mutually agree upon any and all distributions or expenses to be paid out of such accounts.

    d. Until such time that the Promissory Note is repaid in full, the Buyer (and its affiliates) shall not receive any distributions or payments from LNO, unless otherwise approved by KWN in writing. Notwithstanding the above, Buyer and KWN agree that Buyer shall receive a flat fee of $10,000.00 from LNO per month to help cover overhead expenses of the Buyer.

    e. KWN shall hold novation forms for all Such Contracts of LNO and Buyer's Entity as collateral for the Promissory Note. Buyer agrees to deliver the same to KWN as soon as possible following closing on the Purchase Agreement.



1 | Page

f.  Additionally, as collateral for the Promissory Note, Buyer shall grant a first priority security interest in 100% of the equity of LNO to KWN, and KWN shall hold all stock certificates of LNO, within a reasonable time after closing of the Purchase Agreement.

g.  After repayment of the Promissory Note, all free cash flow of LNO shall be distributed to a NewCo. NewCo shall be owed as follows: 1. KWN – 40%; 2. Buyer – 40%; 3. Mike Benson – 10%; and Business Development Representative - 10%.

h.  Buyer hereby agrees that immediately following closing on the Purchase Agreement, to commence the formation and filing of a new entity, which will have distribution rights as set forth in the immediately proceeding section and which Buyer and KWN agree to negotiate in good faith based upon the above and compliance with applicable law.

i.  Management of LNO post-closing shall be as mutually agreed upon by Kenny Novotny and Deryl Wright.

2.  **Governing Law.** The laws of the State of Oklahoma (without giving effect to its conflicts of Law principles) govern this Letter Agreement and all matters arising out of or relating to this Letter Agreement and the transactions.

3.  **Notices.** All notices and other communications under this Letter Agreement must be in writing and are deemed duly delivered when (a) delivered if delivered personally or by nationally recognized overnight courier service (costs prepaid), (b) sent by e-mail or facsimile with confirmation of delivery (or, the first business day following such transmission if the date of transmission is not a business day) or (c) received or rejected by the addressee, if sent by certified mail, return receipt requested; in each case to the following addresses, facsimile number or e-mail addresses and marked to the attention of the individual (by name or title) designated below (or to such other address, facsimile number, e-mail address or individual as a party may designate by notice to the other parties):

| | |
|---|---|
| If to Buyer: | Hui Huliau<br>806 Governors Drive, Suite 201<br>Huntsville, AL 35801<br>Attn: Brendan Prince<br>E-mail: bprince@huihuliau.com<br>Fax: 256-382-8084 |
| With a copy to: | Parker Poe Adams & Bernstein LLP<br>Three Wells Fargo Center<br>401 S Tryon St,<br>Charlotte, NC 28202<br>Attn: Brian K. Parker<br>E-mail: brianparker@parkerpoe.com<br>Fax: 704-334-4706 |
| If to KWN: | KWN Assets, LLC<br>Attn: Kenny Novotny<br><br>Email: knwebs@hotmail.com |
| With a copy to: | Dyer Coatney Schroeder, Attorneys at Law<br>16328 Muirfield Place<br>Edmond, OK 73013<br>Attn: Andrew R. Schroeder |

2 | Page

E-mail: aschroeder@dcslawfirm.com

4.      Waivers. Except as otherwise provided in Section, the failure of a party at any time or times to require performance of any provision hereof or claim damages with respect thereto will in no manner affect its right at a later time to enforce the same. No waiver by a party of any condition or of any breach of any term, covenant, representation or warranty contained in this Letter Agreement will be effective unless in writing, and no waiver in any one or more instances will be deemed to be a further or continuing waiver of any such condition or breach in other instances or a waiver of any other condition or breach of any other term, covenant, representation or warranty.

5.      Severability. If any term or other provision of this Letter Agreement is determined by a court of competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of law or public policy, all other terms, provisions and conditions of this Letter Agreement will nevertheless remain in full force and effect. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto will negotiate in good faith to modify this Letter Agreement so as to effect the original intent of the parties as closely as possible to the fullest extent permitted by applicable law in an acceptable manner to the end that the transactions are fulfilled to the extent possible.

6.      Entire Agreement. This Letter Agreement constitutes the full and entire understanding and agreement among the parties with respect to the subject matter hereof and thereof and supersede any and all prior agreements, arrangements and understandings, both written and oral, with respect to the subject matter hereof and thereof.

7.      Amendment. This Letter Agreement may not be amended, supplemented or otherwise modified except in a written document signed by each party to be bound by the amendment and that identifies itself as an amendment to this Letter Agreement.

8.      Binding Effect; Assignment. Neither this Letter Agreement nor any of the rights, interests or obligations hereunder will be assigned, in whole or in part, by operation of law or otherwise, by any of the parties without the prior written consent of the other parties. This Letter Agreement will be binding upon, inure to the benefit of, and be enforceable by, the parties hereto and their respective successors and permitted assigns. Any purported assignment not permitted under this Section will be null and void.

9.      No Third-Party Beneficiaries. Except as provided herein, nothing in this Letter Agreement is intended to confer any rights or remedies, whether express or implied, on any persons other than the parties and their successors and permitted assigns.

10.     Jurisdiction. The parties hereto hereby irrevocably submit to the jurisdiction of the federal or state courts of the State of Oklahoma over any proceeding arising out of or relating to this Letter Agreement or any of the transactions and each party hereto hereby irrevocably agrees that all claims in respect of such proceeding may be heard and determined in such courts. The parties hereto hereby irrevocably waive any objection which they may now or hereafter have to the laying of venue of any proceeding brought in such court or any claim that such proceeding brought in such court has been brought in an inconvenient forum. Each of the parties hereto agrees that a judgment in such proceeding may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each of the parties hereto hereby irrevocably consents to process being served by any party to this Letter Agreement in any proceeding by delivery of a copy thereof in accordance with this Letter Agreement.

11.     Prevailing Party. In the event that either party brings any suit, action, or proceeding against the other party for any reason arising from or related to this Letter Agreement, then the prevailing Party shall be entitled to recover from the other party any and all costs and expenses, including reasonable attorney fees, arising from, or related to the suit, action, or proceeding.

12.     Specific Performance. Each party hereby acknowledges and agrees that the other parties would be irreparably damaged in the event any of such party's covenants or obligations contained in this Letter Agreement were not performed by such party. Accordingly, in addition to any other right or remedy each party may have, each

party may seek and obtain specific performance of the covenants and obligations set forth in this Letter Agreement and may seek and obtain temporary and permanent injunctive relief to prevent any breach or violation hereof, and no bond or other security may be required from any party in connection therewith. If any proceeding is brought by a party to enforce this Letter Agreement, the other parties hereby waive the defense that there is an adequate remedy at law.

13. Language; Construction. The language used in this Letter Agreement is the language chosen by the parties to express their mutual intent, and no rule of strict construction is to be applied against any party. The parties have participated jointly in the negotiation and drafting of this Letter Agreement. In the event an ambiguity or question of intent or interpretation arises, this Letter Agreement will be construed as if drafted jointly by the parties, and no presumption or burden of proof will arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Letter Agreement.

14. Counterparts; Electronic Signatures. The parties may execute this Letter Agreement in multiple counterparts, each of which constitutes an original as against the party that signed it, and all of which together constitute one agreement. This Letter Agreement is effective upon delivery of one executed counterpart from each party to the other parties. The signatures of all parties need not appear on the same counterpart. The parties further agree that any signature, whether it be electronic, digital or a .pdf copy of a manual signature, is intended to authenticate this Letter Agreement and have the same effect as a manual or original signature. The delivery of signed counterparts by email transmission that includes a copy of the sending party's signature is as effective as signing and delivering the counterpart in person.

*[Signature Page to Follow]*

IN WITNESS WHEREOF. the parties have caused this Letter Agreement to be executed as of the day and year first above written.

~~BORROWER:~~
Buyer
**Hui Huliau**,
a Hawaii non-profit corporation

By: *[signature]*
Name: Adrian Silva
Title: Chairman

**KWN:**

**KWN Assets, LLC.**
an Oklahoma limited liability company

By: _____
Name:  Kenny Novotny
Title:   Manager

IN WITNESS WHEREOF, the parties have caused this Letter Agreement to be executed as of the day and year first above written.

**BORROWER:**

**Hui Huliau,**
a Hawaii non-profit corporation

By: _____
Name: _____
Title: _____

**KWN:**

**KWN Assets, LLC,**
an Oklahoma limited liability company

By: _____
Name: Kenny Novotny
Title:   Manager